## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MELISSA LEE ROTHERMEL, and** : | **CIVIL ACTION NO. 1:16-CV-1669** |
| **C.R., minor, by her parent and natural** : | |
| **guardian, CHAD ROTHERMEL,** : | **(Chief Judge Conner)** |
| : | |
| **Plaintiffs** : | |
| : | |
| **v.** : | |
| : | |
| **DAUPHIN COUNTY,** : | |
| **PENNSYLVANIA**, *et al.*, : | |
| : | |
| **Defendants** : | |

## MEMORANDUM

Plaintiffs Melissa Lee Rothermel ("Rothermel") and C.R., a minor child, by and through her parent and natural guardian, Chad Rothermel, commenced this civil rights litigation raising false arrest and unreasonable search and seizure claims under the United States Constitution and Pennsylvania Constitution, as well as claims of municipal liability pursuant to <u>Monell v. New York City Department of Social Services</u>, 436 U.S. 658 (1978). Before the court are three motions (Docs. 22, 25, 26) to dismiss filed by the various defendants.

## I.    Factual Background and Procedural History

At approximately 4:00 p.m. on February 16, 2015, Rothermel and her 10-year old daughter, C.R., were returning home from a mother-daughter shopping trip in Camp Hill, Pennsylvania. (Doc. 4 ¶ 15). As Rothermel merged onto northbound Interstate 81 from Pennsylvania Route 581 West, she noted a marked Pennsylvania State Police ("State Police") vehicle in an emergency pull-off spot. (<u>Id.</u> ¶ 16). The State Police vehicle pulled out and began to follow Rothermel before passing her

vehicle and driving ahead. (Id.) Rothermel passed the same State Police vehicle shortly thereafter and, once more, the vehicle pulled out, followed Rothermel for a short while, and drove ahead. (Id. ¶ 17). Several miles later, Rothermel again drove past the State Police vehicle, which this time pulled out, followed her vehicle, and activated its overhead lights. (Id. ¶ 18). Rothermel pulled over immediately. (See id.)

Defendant State Police Trooper David Grbich ("Trooper Grbich") approached the driver's side window of Rothermel's vehicle and demanded that she produce her driver's license and registration. (Id. ¶ 19). Rothermel complied. (Id.) Trooper Grbich advised Rothermel that she had an outstanding arrest warrant for buying and selling stolen goods. (See id. ¶ 20). Rothermel explained that Trooper Grbich must have the wrong person, that she had no criminal record, and that she had never been arrested or charged with a crime. (Id.) Trooper Grbich requested further identifying information from Rothermel, including her social security number, date of birth, and home address. (Id. ¶ 21). Rothermel provided all requested information to Trooper Grbich. (Id.)

The arrest warrant in question pertained to an individual named "Mellisa Ann Rothermel." (Doc. 25-1 at 3-4; see Doc. 4 ¶ 30). Plaintiff's name is "Melissa Lee Rothermel." (Doc. 4 ¶ 5). Trooper Grbich noted the discrepancy between plaintiff's middle name and the middle name of the person identified in the National Crime Information Center ("NCIC") warrant hit. (See Doc. 25-1 at 2). Trooper Grbich

apparently overlooked the fact that Rothermel's first name was also different from the name reported on the NCIC.  (See id.)[1]

Trooper Grbich made "several trips" between his vehicle and Rothermel's. (See Doc. 4 ¶ 22).  Rothermel continued to insist to Trooper Grbich that he must have the wrong person.  (Id.)  She requested that, at minimum, she be permitted to contact her husband, Chad Rothermel, to pick up their young daughter.  (See id.) Trooper Grbich refused.  (Id.)  At that time, a second officer, known to Rothermel as "Trooper Miller," arrived on the scene.  (Id. ¶ 23).  Trooper Grbich removed an emotional and confused C.R. from her mother's vehicle.  (Id. ¶ 24).  Trooper Miller then removed Rothermel from her vehicle, restrained her, and placed her in the back of his patrol car.  (Id. ¶ 25).  Rothermel overheard Trooper Grbich radioing to other State Police employees "about where he was taking C.R.," but the amended complaint does not indicate where C.R. was ultimately taken.  (See id. ¶ 26).

Trooper Miller transported Rothermel to the Dauphin County Judicial Center ("Judicial Center"), where "several unknown County employees" searched

---

[1] Details relating to the warrant derive from the police report attached to the State Police defendants' motion to dismiss.  (See Doc. 25-1).  The report is a public record which we may consider in resolving the State Police defendants' motion. See O'Neal v. Rogers, No. 14-3722, 2015 WL 5063955, at *2 & n.4 (E.D. Pa. Aug. 27, 2015) (citing Lawsonv. City of Coatesville, No. 12-6100, 2013 WL 4596129, at *4 (E.D. Pa. Aug. 29, 2013)); Gallis v. Borough of Dickson City, No. 3:05-CV-551, 2006 WL 2850633, at *7 (M.D. Pa. Oct. 3, 2006) (citing Scheetz v. Morning Call, Inc., 946 F.2d 202, 207 (3d Cir. 1991)); see, e.g., White v. Probation Office, No. 1:07-CV-951, 2008 WL 3837045, at *1 (M.D. Pa. Aug. 13, 2008) (Conner, J.).  Plaintiffs do not quarrel with this principle and do not object to Trooper Grbich's reliance on the report in their Rule 12 opposition brief.  (See generally Doc. 36).  To the extent the report is consistent with plaintiffs' allegations, we consider it in resolving the State Police defendants' motion.  See White, 2008 WL 3837045, at *1.

Rothermel and her belongings. (Id. ¶ 29). These same individuals, together with Trooper Miller, requested more identifying information from Rothermel. (Id. ¶ 30). Eventually, they presented Rothermel with documents under the incorrect name of "Mellisa Ann Rothermel." (Id.) Rothermel refused to sign the documents and explained that they clearly pertained to a different person. (Id.) The Judicial Center employees ignored Rothermel's protests and did not investigate the patent discrepancy between Rothermel's identification, bearing the name "Melissa Lee Rothermel," and the warrant issued for "Mellisa Ann Rothermel." (Id.)

At some point thereafter, "[s]everal unknown Prison employees" searched Rothermel a second time, directed her to disrobe and dress in prison clothes, and subjected her to "medical screening and ridicule." (Id. ¶ 31). They also approached Rothermel with additional paperwork again bearing the same incorrect name as the arrest warrant. (Id. ¶ 32). These employees ignored Rothermel's "repeated[] and emphatic[]" protests that she was not the individual named in the warrant. (Id.) Rothermel was placed in general population at Dauphin County Prison ("Prison") for more than 48 hours. (See id. ¶¶ 33, 38). During that time, Rothermel's blood pressure increased to "dangerously high levels," she experienced abdominal and chest pains, and she suffered physical injuries from being forced to climb into the top bunk in her cell. (See id. ¶¶ 34-35).

Rothermel maintained her innocence throughout her incarceration. (See id. ¶ 36). She adjured Prison staff as well as employees of the Dauphin County Adult Probation and Parole Office ("Parole Office") to analyze her fingerprints to confirm her lack of a criminal record. (Id.) The employees ignored her requests. (See id.)

4

On February 19, 2015, Rothermel was released from the Prison without explanation. (Id. ¶ 38). Plaintiffs allege that, since Rothermel's incarceration, she has received two notices from Dauphin County alerting her to erroneously-issued warrants for her arrest. (Id. ¶ 44).

Plaintiffs commenced this action with the filing of a complaint (Doc. 1) on August 11, 2016, subsequently filing an amended complaint (Doc. 4) on August 15, 2016.[2] Plaintiffs identify the following defendants: Dauphin County; the Parole Office; the Prison; the Dauphin County Sheriff's Office ("Sheriff's Office"); the Dauphin County Clerk of Courts Office ("Clerk of Courts Office"); the State Police; and Trooper Grbich. (Id. ¶¶ 7-12). Plaintiffs additionally include several "presently unknown" employees of each defendant entity. (Id.) Plaintiffs assert four counts in their amended complaint, to wit:

∞ Count I: a Section 1983 claim for false arrest in violation of the Fourth Amendment against the State Police, Trooper Grbich, the Prison, and several presently unknown State Police and Prison employees;

∞ Count II: a Section 1983 claim for unreasonable search and seizure in violation of the Fourth Amendment against Trooper Grbich, Dauphin County, the Parole Office, the Prison, and several presently unknown Dauphin County, Parole Office, and Prison employees;

∞ Count III: a Monell claim against Dauphin County, the Parole Office, the Prison, the Sheriff's Office, the Clerk of Courts Office, and the State Police; and

---

[2] The court struck plaintiffs' initial complaint (Doc. 1) *sua sponte* for failure to comply with Local Rule of Court 5.2(d), which prohibits identifying a minor child by full name in a civil action. We instructed plaintiffs to refile the pleading identifying C.R. by her initials only. (See Doc. 3).

∞ Count IV: a claim for false arrest and unreasonable search and seizure under the Pennsylvania Constitution against Trooper Grbich and several presently unknown employees of the State Police.

(Id.)  It appears that Counts I, III, and IV are brought by both plaintiffs, (id. ¶¶ 61-62, 73, 75-76, 80), and Count II is brought by Rothermel alone, (id. ¶¶ 66-67).

Presently pending are three separate motions to dismiss plaintiffs' amended complaint.  (See Docs. 22, 25, 26).  The motions catalogue the defendants into three groups: the Parole Office; the State Police defendants; and the Dauphin County defendants, comprising Dauphin County, the Prison, the Sheriff's Office, and the Clerk of Courts Office.  The motions are ripe for disposition.

## II.    Legal Standard

### A.    Rule 12(b)(1)

A court may dismiss a claim for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).  See FED. R. CIV. P. 12(b)(1).  Such jurisdictional challenges take of one two forms: (1) parties may levy a "factual" attack, arguing that one or more of the pleading's factual allegations are untrue, removing the action from the court's jurisdictional ken; or (2) they may assert a "facial" challenge, which assumes the veracity of the complaint's allegations but nonetheless argues that a claim is not within the court's jurisdiction.  Lincoln Benefit Life Co. v. AEI Life, LLC, 800 F.3d 99, 105 (3d Cir. 2015) (quoting CNA v. United States, 535 F.3d 132, 139 (3d Cir. 2008)).  In either instance, it is the plaintiff's burden to establish jurisdiction.  See Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977).  A defendant may properly raise the jurisdictional defense of Eleventh Amendment immunity in a motion to dismiss pursuant to Rule

12(b)(1).  See Blanciak v. Allegheny Ludlum Corp., 77 F.3d 690, 693 n.2 (3d Cir. 1996)

(citing Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 98-100 (1984)).

**B.      Rule 12(b)(6)**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the

dismissal of complaints that fail to state a claim upon which relief may be granted.

FED. R. CIV. P. 12(b)(6).  When ruling on a motion to dismiss under Rule 12(b)(6), the

court must "accept all factual allegations as true, construe the complaint in the light

most favorable to the plaintiff, and determine whether, under any reasonable

reading of the complaint, the plaintiff may be entitled to relief."  Phillips v. Cty. of

Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings, Ltd.,

292 F.3d 361, 374 n.7 (3d Cir. 2002)).  In addition to reviewing the facts contained

in the complaint, the court may also consider "matters of public record, orders,

exhibits attached to the complaint and items appearing in the record of the case."

Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994);

Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d

Cir. 1993).

Federal notice and pleading rules require the complaint to provide "the

defendant fair notice of what the . . . claim is and the grounds upon which it rests."

Phillips, 515 F.3d at 232 (alteration in original) (quoting Bell Atl. Corp. v. Twombly,

550 U.S. 544, 555 (2007)).  To test the sufficiency of the complaint, the court conducts

a three-step inquiry.  See Santiago v. Warminster Twp., 629 F.3d 121, 130-31 (3d Cir.

2010).  In the first step, "the court must 'tak[e] note of the elements a plaintiff must

plead to state a claim.'"  Id. at 130 (alteration in original) (quoting Ashcroft v. Iqbal,

556 U.S. 662, 675 (2009)).  Next, the factual and legal elements of a claim must be separated; well-pleaded facts are accepted as true, while mere legal conclusions may be disregarded.  Id. at 131-32; see Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).  Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim for relief." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 556. A claim is facially plausible when the plaintiff pleads facts "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.

Courts should grant leave to amend before dismissing a curable pleading in civil rights actions.  See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007); Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).  Courts need not grant leave to amend sua sponte in dismissing non-civil rights claims pursuant to Rule 12(b)(6), Fletcher-Harlee Corp., 482 F.3d at 252-53, but leave is broadly encouraged "when justice so requires."  FED. R. CIV. P. 15(a)(2).

## III.  Discussion

The collective defendants raise immunity and merits defenses to each of plaintiffs' claims.  In view of the distinct defenses raised by the state and county entities, the court will address their pending motions seriatim.  Because plaintiffs have not yet identified or served the "several unknown" employees of each named entity, the analysis which follows concerns the moving defendants alone.

### A. The Parole Office

The Parole Office contends that it is an entity of the Commonwealth of Pennsylvania, not an entity of Dauphin County, entitling the office to Eleventh Amendment immunity.[3] (Doc. 23 at 2-5). The Eleventh Amendment precludes federal claims for monetary damages against a state and its agencies. U.S. CONST. amend. XI; see Kimel v. Fla. Bd. of Regents, 528 U.S. 62, 72-73 (2000); Lombardo v. Pennsylvania, 540 F.3d 190, 194-95 (3d Cir. 2008). This jurisdictional bar applies to agencies of the state and to employees thereof sued in their official capacity. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 66 (1989); Hindes v. FDIC, 137 F.3d 148, 158 (3d Cir. 1998).

The Commonwealth of Pennsylvania vests its judicial power in a unified judicial system, of which all state courts and associated agencies are part. See Haybarger v. Lawrence Cty. Adult Prob. & Parole, 551 F.3d 193, 198 (3d Cir. 2008) (citing PA. CONST. art. V, § 1). The Third Circuit Court of Appeals has explicitly resolved that the Commonwealth's judicial districts, and their respective probation and parole offices, are arms of the state which enjoy the protections of the Eleventh Amendment. Id. (citing Benn v. First Judicial Dist. of Pa., 426 F.3d 233, 240 (3d Cir. 2005)). Following Haybarger, courts within this judicial district consistently hold that county probation and parole offices—and parole officers sued in their official capacities—are arms of the state entitled to Eleventh Amendment immunity. See,

---

[3] The Parole Office also argues that it is entitled to statutory sovereign immunity from plaintiffs' state constitutional claim. (See Doc. 23). Because the Parole Office is not included as a defendant on plaintiffs' state constitutional claim, (see Doc. 4 at 18), we need not address this argument.

e.g., Mathias v. York Cty., No. 1:16-CV-1338, 2017 WL 770610, at *4-6 (M.D. Pa. Feb. 28, 2017); Lawson v. Dauphin Cty. Work Release, No. 1:15-CV-2450, 2016 WL 6090758, at *5-6 (M.D. Pa.), adopted by, 2016 WL 6082127 (M.D. Pa. Oct. 18, 2016); Sapp v. Dauphin Cty. Juvenile Prob., No. 1:14-CV-1105, 2014 WL 6982655, at *6 (M.D. Pa. Dec. 10, 2014).

Plaintiffs request fact discovery on this issue, averring that no court has ever found that the instant Parole Office is an arm of the state. (Doc. 24 at 5-7, 14). *A contrario*, less than two months before plaintiffs submitted their opposition brief, this very court held that the Dauphin County Adult Probation and Parole Office is a state entity entitled to Eleventh Amendment immunity. See Lawson, 2016 WL 6090768, at *5-6, adopted by, 2016 WL 6082127. We conclude that the Parole Office is a Commonwealth entity for purposes of the Eleventh Amendment.

Eleventh Amendment immunity is not absolute. Its protections are subject to three basic limitations: (1) Congress may specifically abrogate a state's sovereign immunity by exercising its enforcement power under the Fourteenth Amendment; (2) a state may waive its sovereign immunity by consenting to suit; or (3) under *Ex parte* Young, 209 U.S. 123 (1908), a state official may be sued in their official capacity for prospective injunctive or declaratory relief. See Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 670 (1999); Kentucky v. Graham, 473 U.S. 159, 169 n.18 (1985); Koslow v. Pennsylvania, 302 F.3d 161, 168 (3d Cir. 2002).

The first two exceptions concern the state entity itself. See Coll. Sav. Bank, 527 U.S. at 670. Neither exception applies here. It is well-settled that Congress had

no intention to abrogate states' sovereign immunity by enacting Section 1983. Will, 491 U.S. at 66. Pennsylvania has unequivocally withheld consent to such suits. 42 PA. CONS. STAT. § 8521(b); see also Lombardo, 540 F.3d at 196 n.3. We have little difficulty concluding that the Eleventh Amendment immunizes the Parole Office from plaintiffs' federal claims against it. See Lawson, 2016 WL 6090758, at *5-6, adopted by, 2016 WL 6082127; see also Sapp, 2014 WL 6982655, at *6. We will dismiss plaintiffs' claims for monetary damages against the Parole Office with prejudice for lack of jurisdiction.[4]

## B.  The State Police Defendants

The State Police defendants raise four principal arguments in response to plaintiffs' amended complaint: *first*, that the State Police, Commissioner Blocker, and Trooper Grbich fall within the ambit of Commonwealth entities and officers entitled to Eleventh Amendment immunity; *second*, that plaintiffs' constitutional claims fail on their merits; *third*, that Trooper Grbich is entitled to qualified immunity; and *fourth*, that plaintiffs' claims against both individual defendants fail for lack of personal involvement by the defendants. (See Doc. 28 at 4-19).

As a preliminary matter, we observe that the amended complaint is substantively silent with respect to Commissioner Blocker. Plaintiffs identify the Commissioner as a defendant in the caption and the introductory paragraphs only; he is not named in any of the four counts asserted by plaintiffs, nor is he referenced

---

[4] Plaintiffs seek declaratory and injunctive relief against "several presently unknown" Parole Office employees in their official capacities, attempting to actuate the prospective relief exception to Eleventh Amendment immunity. As we discuss *infra*, plaintiffs have not identified or served these individual defendants, and the instant motions are not filed on their behalf.

in the request for relief.  (Doc. 4 ¶¶ 58-82 & p.19).  Hence, the below analysis concerns only the State Police and Trooper Grbich in both his official and individual capacities.

### 1.    *Eleventh Amendment Immunity*

The State Police and Trooper Grbich each invoke the Eleventh Amendment in response to plaintiffs' federal claims.  (Doc. 28 at 5-6).  Plaintiffs remonstrate that discovery is necessary to assess whether the State Police defendants are entitled to Eleventh Amendment immunity  (See Doc. 36 at 6-7).  We disagree.

The State Police agency is created by and organized under the laws of the Commonwealth, see 71 PA. STAT. ANN. § 61, and is accordingly entitled to Eleventh Amendment protections.  Trooper Grbich, as a State Police employee sued in his official capacity, shares in the Commonwealth's immunity.  See Will, 491 U.S. at 66; Hindes, 137 F.3d at 158.  As noted, Congress has not waived immunity for Section 1983 claims, see Will, 491 U.S. at 66, and the Commonwealth has not consented to such suits.  See 42 PA. CONS. STAT. § 8521(b); see also Lombardo, 540 F.3d at 196 n.3. Courts regularly dismiss claims against the State Police and official-capacity State Police employees pursuant to the Eleventh Amendment at the Rule 12 stage.  See, e.g., Karolski v. City of Aliquippa, No. 15-1101, 2016 WL 7404551, at *4 (W.D. Pa. Dec. 22, 2016); Hartman v. State of Pa., No. 1:15-CV-523, 2016 WL 4549513, at *3 (M.D. Pa. Sept. 1, 2016); Shumate v. Maturo, No. 13-6610, 2014 WL 5286312, at *2-3 (E.D. Pa. Oct. 15, 2014); see also Atkin v. Johnson, 432 F. App'x 47, 48 (3d Cir. 2011) (nonprecedential).  Plaintiffs' federal claims for damages against the State Police and Trooper Grbich in his official capacity will be dismissed with prejudice.

As pertains Trooper Grbich, plaintiffs also seek declaratory and injunctive relief, invoking the *Ex parte* Young exemption to Eleventh Amendment immunity. (Doc. 4 ¶ 63 & p.19). This claim fails as currently pled. According to plaintiffs' own *allegata*, the claimed ongoing injury—receipt of notices concerning wrongly issued warrants—is attributable to "the County," not the State Police defendants. (See Doc. 4 ¶ 44; see also Doc. 36 at 16-17). Plaintiffs claim broadly that the State Police defendants are engaged in continuing "unlawful practices," postulating that "some type of breakdown must have occurred to enable an innocent citizen to be arrested and incarcerated for no reason." (Doc. 36 at 16-17). Speculation aside, plaintiffs do not articulate an ongoing constitutional harm warranting relief against Trooper Grbich. Accordingly, plaintiffs have failed to state a viable claim for prospective declaratory or injunctive relief against Trooper Grbich in his official capacity.

### 2. *Qualified Immunity*

Plaintiffs assert two federal constitutional claims against Trooper Grbich individually pursuant to Section 1983. (Doc. 4 ¶¶ 58-78). Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials. See 42 U.S.C. § 1983. The statute is not a source of substantive rights, but serves as a mechanism for vindicating rights otherwise protected by federal law. Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996). To state a claim under Section 1983, plaintiffs must show a deprivation of a "right secured by the Constitution and the laws of the United States . . . by a person acting under color of state law." Kneipp, 95 F.3d at 1204 (quoting Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995)). Trooper Grbich does

13

not dispute that he was a state actor at all times relevant herein.  We must thus

assess whether Trooper Grbich's conduct deprived plaintiffs of rights secured by

the United States Constitution.

Trooper Grbich invokes qualified immunity in response to plaintiffs'

constitutional claims.  Qualified immunity protects a state actor who has committed

a constitutional violation if the plaintiff's rights were not "clearly established" when

the individual acted.  Pearson v. Callahan, 555 U.S. 223, 244-45 (2009).  No liability

will attach if a reasonable actor could have believed the challenged conduct was in

compliance with settled law.  Id.; see also Springer v. Henry, 435 F.3d 268, 280 (3d

Cir. 2006).  The doctrine cloaks government officials with "immunity from suit

rather than a mere defense to liability," Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)

(emphasis omitted), and "ensure[s] that insubstantial claims against government

officials [will] be resolved prior to discovery."  Pearson, 555 U.S. at 231-32 (quoting

Anderson v. Creighton, 483 U.S. 635, 640 n.2 (1987)).  The defense generally shields

"all but the plainly incompetent or those who knowingly violate the law."  Ashcroft

v. al-Kidd, 563 U.S. 731, 743 (2011) (quoting Malley v. Briggs, 475 U.S. 335, 341

(1986)).  The burden to establish qualified immunity rests with the defendant

claiming its protection.  Beers-Capitol v. Whetzel, 256 F.3d 120, 142 n.15 (3d Cir.

2001).

A court evaluating a claim of qualified immunity considers two distinct

inquiries: whether, based on the record evidence, a constitutional right has been

violated and, if so, whether the right was "clearly established" at the time of the

alleged violation.  Spady v. Bethlehem Area Sch. Dist., 800 F.3d 633, 637 (3d Cir.

14

2015) (quoting <u>Pearson</u>, 555 U.S. at 232). A court may begin its qualified immunity analysis with either prong. <u>See</u> <u>Pearson</u>, 555 U.S. at 237. Explicit Third Circuit precedent affirms that the right to be free from arrest except on probable cause is clearly established. <u>Andrews v. Scuilli</u>, 853 F.3d 690, 705 (3d Cir. 2016) (quoting <u>Donahue v. Gavin</u>, 280 F.3d 371, 380 (3d Cir. 2002); <u>Orsatti v. N.J. State Police</u>, 71 F.3d 480, 483 (3d Cir. 1995)). We need only determine whether plaintiffs allege a violation of this right.

### a.   <u>**False Arrest**</u>

To prevail on a false arrest claim, a plaintiff must show that she was arrested without probable cause. <u>Groman v. Twp. of Manalapan</u>, 47 F.3d 628, 634 (3d Cir. 1995) (citing <u>Dowling v. City of Phila.</u>, 855 F.2d 136, 141 (3d Cir. 1988)); <u>Dull v. W. Manchester Police Dep't</u>, 604 F. Supp. 2d 739, 750 (M.D. Pa. 2009). Probable cause to arrest exists when facts and circumstances within a police officer's knowledge would convince a reasonable person that an individual has committed an offense. <u>See</u> <u>Beck v. Ohio</u>, 379 U.S. 89, 91 (1964); <u>United States v. Myers</u>, 308 F.3d 251, 255 (3d Cir. 2002). The inquiry is not whether the individual actually committed the crime for which she was arrested, but whether the officer had probable cause to believe so at the time of the arrest. <u>See</u> <u>Wright v. City of Phila.</u>, 409 F.3d 595, 602 (3d Cir. 2005); <u>Groman</u>, 47 F.3d at 634-35.

Preliminarily, we dispense with Trooper Grbich's argument that he is absolved of constitutional liability for lack of "personal involvement." (<u>See</u> Doc. 28 at 17-18). Trooper Grbich asseverates that it was another officer who ultimately placed Rothermel under arrest and transported her to the Prison. (<u>See</u> <u>id.</u>) This

argument ignores the fact that Trooper Grbich was the moving force behind Rothermel's arrest: he initiated the traffic stop, detained Rothermel and C.R. while processing Rothermel's information, misidentified Rothermel, advised Rothermel that she was under arrest, and summoned Trooper Miller to take Rothermel into custody. (Doc. 4 ¶¶ 18-26). Liability for false arrest is not limited to the arresting officer himself: it extends to any other officer "whose intentional actions set the arresting officer in motion." Berg v. Cty. of Allegheny, 219 F.3d 261, 272 (3d Cir. 2000). There is no dispute that Trooper Grbich's actions set Rothermel's arrest in motion. The only remaining inquiry is whether that arrest was supported by probable cause.

Probable cause to arrest generally exists when an officer makes an arrest pursuant to a valid warrant. See Lawson v. Pa. SPCA, 124 F. Supp. 3d 394, 405 (E.D. Pa. 2015) (citing Kis v. Cty. of Schuylkill, 866 F. Supp. 1462, 1469 (E.D. Pa. 1994)). An officer making an arrest pursuant to a facially valid warrant is under no constitutional obligation "to investigate independently every claim of innocence, whether the claim is based on mistaken identity" or otherwise. Baker v. McCollan, 443 U.S. 137, 145-46 (1979). Equally clear, however, is that the mere existence of a warrant does not *ipso facto* insulate an officer from false arrest liability. Goodwin v. Conway, 836 F.3d 321, 327 (3d Cir. 2016) (citing Wilson v. Russo, 212 F.3d 781, 786-90 (3d Cir. 2000)). A mistakenly issued or executed arrest warrant will not supply probable cause for arrest. Berg, 219 F.3d at 270 (citing Arizona v. Evans, 514 U.S. 1, 13 (1995)). When subsequent events reveal that the person arrested is not the person named in the warrant, the arresting officer may be liable for false arrest.

See, e.g., Thomas v. Middlesex Cty. Sheriff's Dep't, No. 07-3017, 2007 WL 2306879, at *1, 3-4 (D.N.J. Aug. 8, 2007). The "key question" in misidentification cases is whether arrest of the wrong person was "reasonable" under the totality of the circumstances. See Alassani v. Walter, No. 10-4491, 2011 WL 135018, at *5 (E.D. Pa. Jan. 14, 2011) (citing McHenry v. Cty. of Del., No. 04-1011, 2005 WL 2789182, at *5 (E.D. Pa. Oct. 24, 2005)); McHenry, 2005 WL 2789182, at *5 (collecting cases).

Plaintiffs acknowledge that Rothermel was arrested pursuant to a facially valid arrest warrant but assert that the warrant "demonstrably did not apply to" her. (See Doc. 4 ¶¶ 20, 60). Trooper Grbich rejoins that the warrant supplied the requisite probable cause to arrest Rothermel. (See Doc. 28 at 6-9; Doc. 38 at 4-7). Trooper Grbich cites his police report to substantiate his contention. (See Doc. 28 at 6-9; see also Doc. 25-1). Therein, Trooper Grbich recounts:

> On above date and time I was traveling south on I 81 behind a silver Honda displaying a 2014 registration validation sticker (refer to blk 20-21). A check of the registration revealed a possible NCIC hit on the vehicle owner. The NCIC hit was issued for a Melissa Ann ROTHERMEL.
>
> I compared the NCIC hit with the owner's information (refer to blks 6-17) and found that the DOB, SS#, PA OLN, and physical description between the two matched. I did notice a difference in the middle name.
>
> A traffic stop was initiated at above location and the operator was identified as Melissa Lee ROTHERMEL. Dauphin County Sheriff's office was contacted, and advised of the discrepancy in the middle name. The sheriff's office confirmed the warrant and I was instructed to transport ROTHERMEL to Dauphin County Prison.
>
> ROTHERMEL was transported to and placed in the custody of the Dauphin County Prison. Patrol was resumed.

(Doc. 25-1 at 1).  The report is incomplete to the extent it fails to identify a second material discrepancy: plaintiff's first name is spelled "Melissa," and the NCIC hit concerned a warrant for an individual named "Mellisa."  (<u>See</u> Doc. 36 at 9; Doc. 38 at 4-5; <u>see</u> <u>also</u> Doc. 25-1 at 3).

Viewed in the light most favorable to plaintiffs, the amended complaint and Trooper Grbich's own police report suggest that Trooper Grbich had reason to doubt that Rothermel was the individual named in the warrant.  Plaintiffs' *allegata* thus adequately support an inference that Trooper Grbich lacked probable cause to arrest Rothermel.  Any determination that probable cause necessarily existed or that Trooper Grbich's actions were reasonable is premature at this juncture. <u>Cf.</u> <u>Watson v. Witmer</u>, 183 F. Supp. 3d 607, 613 (M.D. Pa. 2016) (collecting cases); <u>Alassani</u>, 2011 WL 135018, at *10.  We will deny the motion to dismiss Rothermel's false arrest claim against Trooper Grbich individually.

We agree with Trooper Grbich, however, that the false arrest claim asserted by plaintiff C.R. must be dismissed.  (Doc. 28 at 15-17).  Trooper Grbich contends that once Rothermel was arrested, the only safe option was to transport C.R. from the scene.  (<u>See</u> <u>id.</u>)  He cites case law supporting his assertions that (1) it is entirely appropriate to transport innocent passengers to safety following arrest of a vehicle's driver and (2) mere placement of an individual in a patrol car does not constitute an arrest.  (<u>Id.</u>)  Plaintiffs do not respond to Trooper Grbich's argument appertaining C.R.'s false arrest claim.  (<u>See</u> Doc. 36 at 8-13).  Consequently, we deem C.R.'s false arrest claim to be abandoned.  <u>See</u> <u>Brice v. City of York</u>, 528 F. Supp. 2d 504, 516 n.19 (M.D. Pa. 2007) (citing <u>D'Angio v. Borough of Nescopeck</u>, 34 F. Supp. 2d 256,

265 (M.D. Pa. 1999)); <u>Brown v. Pa. State Dep't of Health</u>, 514 F. Supp. 2d 675, 678 n.7 (M.D. Pa. 2007) (same).

### b. **Unreasonable Search and Seizure of Rothermel**

Rothermel also asserts a claim for unreasonable search and seizure against Trooper Grbich. (<u>See</u> Doc. 4 at 14 & ¶¶ 66-67). The claim stems from "searches of [Rothermel's] person, clothes, and belongings, and the continued detention and incarceration of [Rothermel] for over two days." (<u>Id.</u> ¶ 66). The count does not concern Rothermel's initial arrest. It is titled to include Trooper Grbich as a defendant but is silent with respect to his role in the alleged unconstitutional searches and ongoing detention. (<u>Id.</u> ¶¶ 66-68). Indeed, the allegations supporting this count pertain only to "the County, the Parole Office, the Prison," and several employees thereof. (<u>Id.</u>) The search and seizure count against Trooper Grbich is subject to dismissal for this reason alone. Rothermel appears to concede as much by failing to respond to these points and effectively abandoning the claim. <u>See</u> <u>Brice</u>, 528 F. Supp. 2d at 516 n.19 (citing <u>D'Angio</u>, 34 F. Supp. 2d at 265); <u>Brown</u>, 514 F. Supp. 2d at 678 n.7 (same).

### 3. *State Law Claim*

Trooper Grbich asserts that plaintiffs' claim under the Pennsylvania Constitution is without merit because he had probable cause to stop and arrest Rothermel. We find that plaintiffs' state law constitutional claim fails for more fundamental reasons. First, neither Pennsylvania's General Assembly nor its courts recognize a private cause for damages under the state constitution. <u>See</u> <u>Pocono Mountain Charter Sch. v. Pocono Mountain Sch. Dist.</u>, 442 F. App'x 681,

687 (3d Cir. 2006) (nonprecedential) (quoting Jones v. City of Phila., 890 A.2d 1188, 1208 (Pa. Commw. Ct. 2006)); O'Donnell v. Cumberland Cty., 195 F. Supp. 3d 724, 730-31 (M.D. Pa. 2016) (collecting cases). Equitable remedies remain available to redress state constitutional violations, see Pocono Mountain, 442 F. App'x at 688 (quoting Moeller v. Bradford Cty., 444 F. Supp. 2d 316, 320-21 (M.D. Pa. 2006); Jones, 890 A.2d at 1216), but we determined *supra* that plaintiffs fail to plead entitlement to an equitable remedy against Trooper Grbich.

Second, although Trooper Grbich has not invoked statutory sovereign immunity in response to plaintiffs' state constitutional claim, see 1 PA. CONS. STAT. § 2310, he is ostensibly protected thereby. The Commonwealth's statutory sovereign immunity is broader in scope than Eleventh Amendment immunity and shields state employees "in both their official *and* individual capacities." Kintzel v. Kleeman, 965 F. Supp. 2d 601, 606 (M.D. Pa. 2013) (emphasis added) (quoting Larsen v. State Emps.' Ret. Sys., 553 F. Supp. 2d 403, 420 (M.D. Pa. 2008)); see also Brautigam v. Fraley, 684 F. Supp. 2d 589, 593-94 (M.D. Pa. 2010) (collecting cases). For all of these reasons, we will dismiss plaintiffs' state law constitutional claim against Trooper Grbich with prejudice.

### C.     The Dauphin County Defendants

The Dauphin County defendants seek dismissal of plaintiffs' amended complaint on several grounds, asserting: *first*, that the Clerk of Courts' Office and the Sheriff's Office are arms of the Commonwealth entitled to Eleventh Amendment immunity; *second*, that neither the Prison, the Sheriff's Office, nor the Clerk of Courts office is a "person" for purposes of Section 1983; *third*, that

all Dauphin County defendants are entitled to quasi-judicial immunity; and *fourth*, that plaintiffs fail to adequately plead a Monell claim against the Dauphin County defendants.  (See Doc. 29 at 4-10).

### 1.    *Respondeat Superior Liability*

As a threshold matter, we will dismiss Count I to the extent it purports to state a claim against the Prison and Count II to the extent it purports to state a claim against both Dauphin County and the Prison.  These counts do not concern actions taken directly by the County or the Prison.  (See Doc. 4 ¶¶ 58-68).  Rather, the counts concern actions taken *by employees* of both entities and seek to hold the entities liable for their employees' acts.  (See id.)  Municipalities and other local governments are "persons" for purposes of Section 1983 liability, Monell v. N.Y.C. Dep't of Social Servs., 436 U.S. 658, 690 (1978), but such entities may not be held liable under a theory of *respondeat superior* liability.  Bd. of Cty. Comm'rs v. Brown, 520 U.S. 397, 403 (1997) (citing Monell, 436 U.S. at 692); see also Colburn v. Upper Darby Twp., 946 F.2d 1017, 1027 (3d Cir. 1991).  Claims of municipal liability must instead be predicated on a municipal policy or custom that caused the challenged action.  See Monell, 436 U.S. at 691-95.  Plaintiffs properly assert a Monell claim in Count III against, *inter alia*, Dauphin County, the Prison, the Sheriff's Office, and the Clerk of Courts Office.  (See Doc. 4 ¶¶ 69-78).  Counts I and II will be dismissed with prejudice as to Dauphin County and the Prison.

### 2.    *Monell Liability*

Municipal liability arises when a government causes an employee to violate another's constitutional rights by an official custom or policy.  Monell, 436

U.S. at 690-94; see also Montgomery v. De Simone, 159 F.3d 120, 126 (3d Cir. 1998).

To establish liability under Monell, a plaintiff must identify the challenged policy or custom, demonstrate proper attribution to the public entity, and show a causal link between the execution of the policy or custom and the injury suffered. See Natale v. Camden Cty. Corr. Facility, 318 F.3d 575, 583-84 (3d Cir. 2003). A policy exists when a decisionmaker possessing final authority to establish public policy with respect to the disputed action issues an official proclamation, policy, or edict. Id. at 584 (quoting Kneipp, 95 F.3d at 1212). By contrast, a custom is an act that is not formally approved but is nonetheless "so widespread as to have the force of law." Id. (quoting Brown, 520 U.S. at 404). A plaintiff may also establish municipal liability by showing that a policymaker failed to take affirmative action despite an obvious need to correct the "inadequacy of existing practice [which is] so likely to result in the violation of constitutional rights" that inaction exhibits "deliberate indifference" to the need. Id. (quoting Brown, 520 U.S. at 417-18).

Before addressing the merits of plaintiffs' Monell claim, we first identify the appropriate defendant. Plaintiffs name Dauphin County itself as a defendant, as well as several constituent entities of the County, including the Prison, the Clerk of Courts Office, and the Sheriff's Office. The County itself is the only appropriate defendant *sub judice*. Within our judicial district, courts uniformly hold that prisons and sheriff's offices are merely administrative subdivisions of the county and are not separate legal entities subject to liability independent thereof. See, e.g., Rios v. Dauphin Cty. Prison, No. 4:17-CV-671, 2017 WL 2118288, at *2 (M.D. Pa. May 16, 2017); Gresh v. Huntingdon Cty., No. 1:15-CV-1466, 2016 WL 1162320, at *4 (M.D. Pa.

Mar. 24, 2016). Likewise, although no court has yet been tasked to decide whether a county clerk of court is a "person" for purposes of stating a Section 1983 claim, the Pennsylvania Constitution designates the clerk of court as a county officer.[5] See PA. CONST. art. IX, § 4. We will dismiss plaintiffs' Monell claim with prejudice as to the Prison, the Clerk of Courts Office, and the Sheriff's Office.

As for the merits, the amended complaint fails to state a claim. Plaintiffs cursorily aver that Dauphin County "refused to adequately train, direct, supervise, or control employees" to prevent constitutional violations. (Doc. 4 ¶ 75). To prevail on a failure to train claim, a plaintiff ordinarily must demonstrate a "pattern of similar constitutional violations" committed in the past by untrained employees. Connick, 563 U.S. at 62. However, the Supreme Court has suggested that there exists a "narrow range of circumstances" in which a single violation may support failure-to-train liability. Brown, 520 U.S. at 409. Plaintiffs do not set forth a pattern of prior incidents putting Dauphin County on notice of a training or supervision deficiency. (See generally Doc. 4). Nor have plaintiffs alleged that the need for

---

[5] Several district courts have, however, found that a clerk of court is not a "person" under Section 1983 because the office is entitled to Eleventh Amendment immunity. The Clerk of Courts Office and the Sheriff's Office *sub judice* each seek dismissal on this ground. (Doc. 29 at 4-6). They cite several unpublished district court decisions for the proposition that both offices are part of the Commonwealth court system which share in the state's sovereign immunity. (Id.) The question is more nuanced than the cited authority suggests because, as noted above, the state constitution designates clerks of court and sheriffs as "[c]ounty officers" rather than state officers. See PA. CONST. art. 9, § 4. Conflicting decisional law reflects that this issue is far from settled. Compare O'Neal v. Bedford Cty., No. 3:16-CV-62, 2017 WL 244866, at *4 (W.D. Pa. Jan. 19, 2017) (immunity applies regardless of county officer designation) with Open Inns, Ltd. v. Chester Cty. Sheriff's Dep't, 24 F. Supp. 2d 410, 422 (E.D. Pa. 1998) (immunity does not apply due to county officer designation). Because we will dismiss plaintiffs' claims against these defendants on other grounds, we need not address this question.

training was "so obvious" as to justify single incident liability.  See City of Canton v. Harris, 489 U.S. 378, 390 (1989).  Indeed, plaintiffs allege no specific facts at all to substantiating their failure to train claim.

Plaintiffs further make the sweeping claim that Dauphin County maintains a "policy and practice" of authorizing employees to violate and cover up violations of citizens' Fourth Amendment rights.  (Doc. 4 ¶¶ 71-72).  Other than this conclusory assertion, the amended complaint does not support the existence of a municipal policy, custom, or practice of violating citizens' rights.  Plaintiffs seem to recognize as much, conjecting that the isolated incident described in the amended complaint could not have occurred but for an institutional policy or practice and requesting discovery to "substantiate their claims." (Doc. 37 at 12-13).  These vague assertions and generalized supposition do not withstand Rule 12 scrutiny.  See Groman, 47 F.3d at 637; see also Santiago, 629 F.3d at 131.  We will dismiss plaintiffs' Monell claim against Dauphin County.

### D.    Leave to Amend

The Third Circuit Court of Appeals requires district courts to grant leave to amend in civil rights cases when a curative amendment is conceivable.  See Fletcher-Harlee Corp., 482 F.3d at 251; Grayson, 293 F.3d at 108.  To the extent plaintiffs' claims are not subject to dismissal with prejudice as noted herein, the court will grant plaintiffs an opportunity to amend their pleading, as more fully articulated in the forthcoming order.

### E.    Unknown Individual Defendants

Plaintiffs also assert claims against various "unknown" employees of Dauphin County, the Parole Office, the Prison, the Sheriff's Office, the Clerk of Courts Office, and the State Police.  (See Doc. 4 ¶¶ 7-12).  These defendants have not yet been identified or served by the plaintiffs.  Plaintiffs have now had the benefit of discovery and are approaching the recently-extended fact discovery deadline.  (See Doc. 45).  The court will order plaintiffs to identify the "unknown" defendants in a second amended pleading within twenty days of the date of this memorandum and to thereafter effect service in accordance with the Federal Rules of Civil Procedure.  We caution plaintiffs that noncompliance with this directive will result in dismissal of the "unknown" defendants.  See FED. R. CIV. P. 4(m).

## IV.   Conclusion

The court will grant in part and deny in part defendants' motions (Docs. 22, 25, 26) to dismiss, as more fully articulated herein.  An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:    September 29, 2017