## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MELISSA LEE ROTHERMEL, and**<br>**C.R., minor, by her parent and natural**<br>**guardian, CHAD ROTHERMEL,** | : **CIVIL ACTION NO. 1:16-CV-1669**<br>:<br>: **(Chief Judge Conner)**<br>: |
| **Plaintiffs** | :<br>: |
| **v.** | :<br>: |
| **DAUPHIN COUNTY,**<br>**PENNSYLVANIA**, *et al.*, | :<br>:<br>: |
| **Defendants** | : |

## MEMORANDUM

Plaintiffs commenced this civil rights litigation raising false arrest and illegal seizure claims under the United States Constitution, as well as claims of municipal liability pursuant to <u>Monell v. New York City Department of Social Services</u>, 436 U.S. 658 (1978). Before the court are two motions (Docs. 61, 62) to dismiss filed by the various defendants.

## I.    Factual Background and Procedural History

The constitutional claims in this case arise from the arrest and detention of plaintiff Melissa *Lee* Rothermel ("M.L. Rothermel") based on a bench warrant intended to be issued for Melissa *Ann* Rotharmel ("M.A. Rotharmel").

### A.    The Bench Warrant for M.A. Rotharmel

The Pennsylvania State Police ("State Police") received a report in June 2009 indicating that M.A. Rotharmel may have committed theft of services by charging $128.80 in internet services to another person. (Doc. 48 ¶ 12). Defendant State

Police Trooper Randy L. Orlic ("Trooper Orlic")[1] prepared a criminal complaint intending to charge M.A. Rotharmel. (Id. ¶¶ 14-15). The criminal complaint was rife with errors—it misspelled the accused's name "Mellisa Ann Rothermel" instead of "Melissa Ann Rotharmel"; identified her gender as male; listed the accused's date of birth as a month and day in 1980 when her correct date of birth was a different month and day in 1983; listed the accused's driver's license number as a number ending in "7" when her actual driver's license number was a different number ending in "8"; listed the accused's Social Security number as a number ending in "9" when her actual Social Security number was a different number ending in "5"; and omitted the accused's eye color. (Id. ¶ 16).

The criminal complaint was filed on June 23, 2009. (Id. ¶ 17). In an internal incident report submitted eight days later, Trooper Orlic accurately identified M.A. Rotharmel's gender, date of birth, driver's license number, Social Security number, and eye color. (Id. ¶ 21). Nonetheless, following M.A. Rotharmel's arraignment in October 2009, the documentation produced by the arraigning court identified her by the incorrect information included in Trooper Orlic's criminal complaint. (Id. ¶ 25). M.A. Rotharmel pled guilty and was sentenced to probation. (Id. ¶¶ 28-29).

Defendant Gus Brown ("P.O. Brown"), an adult probation officer employed by Dauphin County Adult Probation and Parole ("the Parole Office"), was assigned

---

[1] The second amended complaint identifies Trooper Orlic as an "employee[]" of the Pennsylvania State Police and the Commonwealth of Pennsylvania but does not expressly state that he is a State Police trooper. (See Doc. 48 ¶ 10). However, the pleading includes sufficient facts about actions taken by this individual and by other named employees of the State Police for the court to infer that they are in fact State Police troopers.

to supervise M.A. Rotharmel.  (Id. ¶¶ 11, 31).  M.A. Rotharmel's name is spelled correctly in the Parole Office's records, but her file incorrectly identifies her gender and birth date.  (Id. ¶¶ 32-33).  M.A. Rotharmel violated the terms of her probation, and P.O. Brown submitted a request for revocation hearing to the Dauphin County District Attorney and to the Dauphin County Court of Common Pleas.  (Id. ¶¶ 34-35).  That request correctly spelled the probationer's name as "Melissa Ann Rotharmel." (Id. ¶ 35).  When M.A. Rotharmel failed to appear at the hearing, the court issued a bench warrant in the name of "Mellisa Ann Rothermel."  (Id. ¶¶ 36-37).

Plaintiffs allege that failures by several municipal defendants—Dauphin County, Pennsylvania ("Dauphin County"), Dale Klein, in her official capacity as Dauphin County Clerk of Courts ("Clerk Klein"), and Nicholas Chimienti, Jr., in his official capacity as Sheriff of Dauphin County ("Sheriff Chimienti")—contributed to the events that followed.  They contend that, together, these defendants utilized an automated electronic case management system that automatically transferred the erroneous identifying information in M.A. Rotharmel's criminal complaint to a bench warrant and that the system failed to include checks to account for and correct error.  (Id. ¶¶ 38-39, 41).  Plaintiffs also contend that Clerk Klein and Sheriff Chimienti failed to develop policies and train staff concerning the need to double-check that information included on a bench warrant is accurate.  (Id. ¶¶ 42-43).

### B.    The Arrest of M.L. Rothermel

At approximately 4:00 p.m. on February 16, 2015, M.L. Rothermel and her 10-year old daughter, C.R., were returning home from a mother-daughter

shopping trip in Camp Hill, Pennsylvania.  (Id. ¶ 47).  As M.L. Rothermel merged onto northbound Interstate 81 from Pennsylvania Route 581 West, she noted a marked State Police vehicle in an emergency pull-off spot.  (Id. ¶ 48).  The State Police vehicle—driven by defendant State Police Trooper David Grbich ("Trooper Grbich")—pulled out and began to follow Rothermel before passing her vehicle and driving ahead.  (See id. ¶¶ 48, 51, 55).  M.L. Rothermel passed the same State Police vehicle shortly thereafter and, once more, the vehicle pulled out, followed her for a short while, and drove ahead.  (Id. ¶ 49).  Several miles later, M.L. Rothermel again drove past the State Police vehicle, which this time pulled out, followed her vehicle, and activated its overhead lights.  (Id. ¶ 50).  M.L. Rothermel pulled over immediately.  (See id.)

Trooper Grbich had run M.L. Rothermel's license plate number through his patrol car's computer system while following her vehicle.  (Id. ¶ 51).  That system includes a search of the Commonwealth Law Enforcement Assistance Network ("CLEAN") system.  (Id.)  The CLEAN system in turn relies on the FBI's National Crime Information Center ("NCIC") database to determine whether the vehicle owner or individuals with a name similar to the vehicle owner have outstanding warrants.  (Id. ¶ 52).

Trooper Grbich's search revealed that the vehicle was owned by M.L. Rothermel.  (Id. ¶ 51).  The search also returned an NCIC alert for the bench warrant issued under the name "Mellisa Ann Rothermel."  (Id. ¶ 53).  The NCIC alert indicated that the individual subject to the warrant was born in 1980; was 5 feet and 5 inches tall; weighed 150 pounds; had a driver's license number ending in

"7" and a Social Security number ending in "8"; and went by an alias of "Melissa Ann Rothermel." (Id. ¶ 54).

After initiating the traffic stop, Trooper Grbich approached the driver's side window of M.L. Rothermel's vehicle and "demanded" that she produce her driver's license and registration. (Id. ¶ 55). She complied. (Id.) Trooper Grbich advised M.L. Rothermel that she had an outstanding arrest warrant for theft of telecom services. (Id. ¶ 56). M.L. Rothermel explained that Trooper Grbich must have the wrong person, that she had no criminal record, and that she had never been arrested or criminally charged. (Id. ¶ 57). Trooper Grbich requested further identifying information, include a Social Security number, date of birth, and home address, and M.L. Rothermel again fully complied. (Id. ¶ 58).

Due to the errors in the criminal complaint and bench warrant, M.L. Rothermel's driver's license number, Social Security number, and date of birth matched the information in the NCIC alert. (Id. ¶ 59). Her first and middle name, however, did not match the alert, and she avers that, at the time of the incident, she weighed approximately 100 pounds more than the weight listed in the alert. (See id. ¶¶ 61-62). Trooper Grbich placed M.L. Rothermel under arrest notwithstanding these discrepancies. (Id. ¶ 63).

Defendant State Police Trooper Matthew Miller ("Trooper Miller") thereafter arrived at the scene. (Id. ¶ 64). Trooper Grbich contacted Sergeant Ron Fernler of the Dauphin County Sheriff's Office, who confirmed that the warrant was active but did not independently confirm the accuracy of the information in the warrant. (Id. ¶ 65). M.L. Rothermel requested that Trooper Grbich wait to arrest her until her

husband, Chad Rothermel, could collect C.R., but Trooper Grbich refused. (See id. ¶ 66). He instructed M.L. Rothermel to call a friend or family member who lived nearby to take custody of C.R., and M.L. Rothermel reluctantly did so. (Id. ¶ 67).

Trooper Grbich "forcibly removed" an emotional and confused C.R. from her mother's vehicle and placed her in the back of his patrol car. (Id. ¶ 68). Trooper Miller removed M.L. Rothermel from her vehicle, restrained her, and placed her in the back of his patrol car. (Id. ¶ 69). Trooper Grbich then transported C.R. to the home of a family friend while Trooper Miller transported M.L. Rothermel to Dauphin County Prison ("the Dauphin County Prison" or "the Prison") for booking. (Id. ¶¶ 69, 71). M.L. Rothermel alleges that she became upset during the trip when she heard Trooper Grbich radioing to other officers about where he was taking C.R. (Id. ¶ 72).

Trooper Miller transported M.L. Rothermel to Dauphin County's booking center, where she was searched before being moved to Dauphin County Prison. (Id. ¶ 76). M.L. Rothermel was not fingerprinted or processed. (Id.) M.L. Rothermel was again searched upon arrival at the Prison. (Id. ¶ 77). She insisted to multiple Prison employees that she had been misidentified and offered to be fingerprinted to prove her identity. (Id. ¶¶ 78-80). Notwithstanding these protests, Rothermel was not fingerprinted during the booking or admission process, and no Prison employee checked her name or other identifiers against the bench warrant. (Id. ¶¶ 80-81). She alleges that Dauphin County has a policy of delaying collection of required identifying information for several days after an individual has been detained. (Id. ¶¶ 85-86).

M.L. Rothermel submitted an "Inmate Request Form" on February 17, 2015, reiterating that she had been wrongly detained. (Id. ¶ 90). The following day, M.L. Rothermel met with a Dauphin County employee to complete the intake process, and she restated that she had been misidentified and incarcerated in error. (Id. ¶ 91). Her husband eventually marshaled the assistance of a then-state senator, whose office contacted the State Police and Dauphin County to inquire about the matter. (Id. ¶ 93). On February 18, 2015, after more than 48 hours in prison, M.L. Rothermel was released without explanation. (Id. ¶ 94).

M.L. Rothermel alleges that, during detention, her blood pressure increased to "dangerously high levels," she experienced abdominal and chest pains, and she suffered physical injuries from being forced to climb into the top bunk in her cell. (See id. ¶¶ 88-89). She has suffered severe emotional distress and "is constantly in fear that she will be illegally arrested and imprisoned again." (Id. ¶¶ 97-98). Since her arrest, M.L. Rothermel twice received notices from Dauphin County alerting her to erroneously-issued warrants for her arrest. (Id. ¶ 101). She resigned from her job as a bank supervisor and notary public—both of which required driving and engaging with law enforcement—due to anxiety. (Id. ¶¶ 46, 96-97). Plaintiffs allege that C.R. likewise has suffered humiliation and emotional distress. (Id. ¶ 99).

Plaintiffs commenced this action with the filing of a complaint on August 11, 2016, subsequently filing an amended complaint on August 15, 2016.[2] Following

---

[2] The court struck plaintiffs' initial complaint (Doc. 1) *sua sponte* for failure to comply with Local Rule of Court 5.2(d), which prohibits publicly identifying a minor child by full name in a civil action. We instructed plaintiffs to refile the pleading identifying C.R. by her initials only. (Doc. 3).

Rule 12(b) motion practice, plaintiffs filed a second amended complaint with the

court's leave.  Therein, plaintiffs assert the following Section 1983 claims:

∞ Count I: a claim for false arrest in violation of the Fourth Amendment by
M.L. Rothermel, against Trooper Grbich, Trooper Miller, Trooper Orlic,
and P.O. Brown in their individual capacities;

∞ Count II: a claim for illegal seizure in violation of the Fourth Amendment
by C.R., through her parent and natural guardian Chad Rothermel,
against Trooper Grbich in his individual capacity;

∞ Count III: a claim for a custom or practice of exhibiting deliberate
indifference in violation of the Fourth and Fourteenth Amendments by
both plaintiffs against Dauphin County as well as Clerk Klein and Sheriff
Chimienti in their official capacities;

∞ Count IV: a claim for failure to train and equip exhibiting deliberate
indifference in violation of the Fourth and Fourteenth Amendments
by both plaintiffs against defendant Tyree C. Blocker ("Commissioner
Blocker"), in his official capacity as Commissioner of the Pennsylvania
State Police; and

∞ Count V: a claim for failure to train and equip exhibiting deliberate
indifference in violation of the Fourth and Fourteenth Amendments by
M.L. Rothermel against Dauphin County.

Plaintiffs request compensatory and punitive damages as permitted under

the law in addition to a declaration that the identified policies and customs are

unconstitutional.  Plaintiffs also seek injunctive relief in the form of an order: (1)

directing Dauphin County to identify and implement remedial procedures for

confirming suspects' identities prior to detention; (2) directing Dauphin County and

Sheriff Chimienti to institute procedures for ensuring that bench warrants correctly

identify the offender; (3) directing Dauphin County and Clerk Klein to institute a

policy requiring employees of the Clerk of Courts' office to verify that information

in its computer-based case management system is correct before presenting a

bench warrant to a judge; and (4) directing Commissioner Blocker to provide training to all State Police troopers on the Fourth Amendment implications of executing bench warrants.

Defendants move to dismiss the bulk of plaintiffs' second amended complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The pending motions catalogue the defendants into two groups: the State Police defendants, comprising Commissioner Blocker in his official capacity and Troopers Grbich, Miller, and Orlic in their individual capacities; and the Dauphin County defendants, comprising Dauphin County, as a political subdivision of the Commonwealth of Pennsylvania, and Clerk Klein and Sheriff Chimienti in their respective official capacities. The motions are ripe for disposition.

## II. <u>Legal Standard</u>

### A. **Rule 12(b)(1)**

A court may dismiss a claim for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). <u>See</u> Fed. R. Civ. P. 12(b)(1). Such jurisdictional challenges take of one two forms: (1) parties may levy a "factual" attack, arguing that one or more of the pleading's factual allegations are untrue, removing the action from the court's jurisdictional ken; or (2) they may assert a "facial" challenge, which assumes the veracity of the complaint's allegations but nonetheless argues that a claim is not within the court's jurisdiction. <u>Lincoln Benefit Life Co. v. AEI Life, LLC</u>, 800 F.3d 99, 105 (3d Cir. 2015) (quoting <u>CNA v. United States</u>, 535 F.3d 132, 139 (3d Cir. 2008)). In either instance, it is the plaintiff's burden to establish jurisdiction. <u>See</u> <u>Mortensen v. First Fed. Sav. & Loan Ass'n</u>,

549 F.2d 884, 891 (3d Cir. 1977).  A defendant may properly raise the jurisdictional

defense of Eleventh Amendment immunity in a motion to dismiss pursuant to Rule

12(b)(1).  See Blanciak v. Allegheny Ludlum Corp., 77 F.3d 690, 693 n.2 (3d Cir. 1996)

(citing Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 98-100 (1984)).

**B.  Rule 12(b)(6)**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the

dismissal of complaints that fail to state a claim upon which relief may be granted.

FED. R. CIV. P. 12(b)(6).  When ruling on a motion to dismiss under Rule 12(b)(6), the

court must "accept all factual allegations as true, construe the complaint in the light

most favorable to the plaintiff, and determine whether, under any reasonable

reading of the complaint, the plaintiff may be entitled to relief."  Phillips v. County

of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings,

Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)).  In addition to reviewing the facts

contained in the complaint, the court may also consider "matters of public record,

orders, exhibits attached to the complaint and items appearing in the record of the

case."  Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit

Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

Federal notice and pleading rules require the complaint to provide "the

defendant fair notice of what the . . . claim is and the grounds upon which it rests."

Phillips, 515 F.3d at 232 (alteration in original) (quoting Bell Atl. Corp. v. Twombly,

550 U.S. 544, 555 (2007)).  To test the sufficiency of the complaint, the court conducts

a three-step inquiry.  See Santiago v. Warminster Township, 629 F.3d 121, 130-31

(3d Cir. 2010).  In the first step, "the court must 'tak[e] note of the elements a

plaintiff must plead to state a claim.'" Id. at 130 (alteration in original) (quoting

Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)). Next, the factual and legal elements of a

claim must be separated; well-pleaded facts are accepted as true, while mere legal

conclusions may be disregarded. Id. at 131-32; see Fowler v. UPMC Shadyside, 578

F.3d 203, 210-11 (3d Cir. 2009). Once the court isolates the well-pleaded factual

allegations, it must determine whether they are sufficient to show a "plausible claim

for relief." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550

U.S. at 556. A claim is facially plausible when the plaintiff pleads facts "that allow[]

the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." Iqbal, 556 U.S. at 678.

## III.   Discussion

In their renewed Rule 12(b) motions, the defendants again raise immunity

and merits defenses to each of plaintiffs' claims. The court will address defendants'

pending motions *seriatim*, beginning with the State Police defendants.

### A.   The State Police Defendants

Plaintiffs' claims against the State Police defendants are threefold: in

Count I, M.L. Rothermel asserts a claim for false arrest against Troopers Grbich,

Miller, and Orlic; in Count II, C.R. asserts a claim for illegal seizure against Trooper

Grbich; and in Count IV, plaintiffs together assert a claim against Commissioner

Blocker in his official capacity for failure to train and equip State Police troopers.

### 1. Count I: False Arrest Claim by M.L. Rothermel Against Troopers Grbich, Miller, and Orlic

M.L. Rothermel asserts that Troopers Grbich and Miller falsely arrested her without probable cause and that Trooper Orlic set in motion that false arrest when he failed to correct inaccurate identifying information in the criminal complaint for M.A. Rotharmel's arrest. In resolving the State Police defendants' first motion to dismiss, we found that plaintiffs had adequately alleged that Trooper Grbich may have lacked probable cause to arrest M.L. Rothermel. (Doc. 46 at 17-18). Trooper Grbich does not revisit this determination as pertains plaintiffs' second amended complaint. We will address Count I against Troopers Miller and Orlic only.

Troopers Miller and Orlic raise a statute of limitations defense. Federal Rule of Civil Procedure 8(c) classifies a statute of limitations claim as an affirmative defense that must be pled in an answer to the complaint. See FED. R. CIV. P. 8(c). Nevertheless, the court may dismiss a complaint as time-barred under Rule 12(b)(6) if "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." Robinson v. Johnson, 313 F.3d 128, 135 (3d Cir. 2002); see Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.1 (3d Cir. 1994). This deficiency must be apparent on the face of the pleading. Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014) (citation omitted). The Third Circuit has indicated that the meaning of "the face of the complaint," as it relates to asserting affirmative defenses in a motion to dismiss, is coextensive with the general Rule 12(b)(6) limitations. Id.; see also Hoffman v. Nordic Nats., Inc., 837

F.3d 272, 280 & n.52 (3d Cir. 2016) (citations omitted) (discussing raising affirmative defense of preclusion in Rule 12(b)(6) motion).

The traffic stop and arrest of M.L. Rothermel occurred on February 16, 2015. (Doc. 48 ¶¶ 1, 47).  Section 1983 claims in Pennsylvania are governed by a two-year statute of limitations.  Wisniewski v. Fisher, 857 F.3d 152, 157 (3d Cir. 2017) (citing Knoll v. Springfield Twp. Sch. Dist., 763 F.2d 584, 585 (3d Cir. 1985)).  Troopers Miller and Orlic allege that M.L. Rothermel's claim against them—asserted for the first time in the second amended complaint filed September 29, 2017—are time-barred by the applicable two-year statute of limitations.

Plaintiffs rejoin that the claim against Troopers Miller and Orlic "relates back" to plaintiffs' timely filed initial complaint.  Federal Rule of Civil Procedure 15(c) provides that an amendment to a pleading to change a party will "relate back" to the date of the original pleading if (1) the allegations in the amended pleading concern the same conduct, transactions, or occurrences set forth in the antecedent pleading; (2) all substituted defendants received notice of the action within the original time period for service of process under Rule 4(m) such that they are not prejudiced; and (3) all substituted defendants knew or should have known that, but for a mistake, the plaintiff would have named them in the original pleading.  FED. R. CIV. P. 15(c)(1)(C).

Troopers Miller and Orlic challenge only the second and third requirements, contending that neither defendant had notice of this litigation during the Rule 4(m) service period and that both will suffer prejudice if forced to defend on the merits. (See Doc. 63 at 9-13).  The arguments by both sides on this issue rest almost entirely

on facts asserted in their respective briefs but not supported by the Rule 12(b)(6) record. As it stands, the court cannot ascertain from the face of plaintiffs' second amended complaint whether Troopers Miller and Orlic had actual or constructive notice of this litigation within Rule 4(m)'s 90-day service period. See, e.g., Stewart v. Wenerowicz, No. 12-4046, 2015 WL 5092865, at *6-7 (E.D. Pa. Aug. 27, 2015). It is plausible based on the allegations in the initial complaint—which did not name Trooper Orlic explicitly but concerned a criminal complaint prepared and filed by him, and which named Trooper Miller by his surname—that these officers received notice of the lawsuit within the service period. We cannot find at this juncture that M.L. Rothermel's claim against Troopers Orlic and Miller is untimely. The court will thus deny the State Police defendants' motion to dismiss Count I.[3]

2. ***Count II: Illegal Seizure Claim by C.R. Against Trooper Grbich***

In Count II, C.R. asserts a claim against Trooper Grbich in his individual capacity for illegal seizure based upon Trooper Grbich's actions in removing C.R. from her mother's vehicle and placing C.R. in the back of Trooper Grbich's patrol car following her mother's arrest. Trooper Grbich asserts that C.R. fails to state a claim for which relief may be granted and, alternatively, that he is protected by qualified immunity. Trooper Grbich concedes that placing C.R. in his patrol car constituted a "seizure" for purposes of the Fourth Amendment but contends that, by transporting C.R. to the custody of a family friend upon the arrest of her mother,

---

[3] Troopers Miller and Orlic rely exclusively on the statute of limitations defense and do not otherwise challenge the sufficiency of M.L. Rothermel's Fourth Amendment claim against them. Hence, we do not address the merits of this claim.

he did what any reasonable law enforcement officer would have done. We address Trooper Grbich's arguments through the prism of the qualified immunity doctrine.

Qualified immunity protects a state actor who has committed a constitutional violation if the plaintiff's rights were not "clearly established" when the individual acted. See Pearson v. Callahan, 555 U.S. 223, 244-45 (2009). No liability will attach if a reasonable actor could have believed the challenged conduct was in compliance with settled law. Id.; see also Springer v. Henry, 435 F.3d 268, 280 (3d Cir. 2006). The doctrine cloaks government officials with "immunity from suit rather than a mere defense to liability," Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) (emphasis omitted), and "ensure[s] that insubstantial claims against government officials [will] be resolved prior to discovery." Pearson, 555 U.S. at 231-32 (quoting Anderson v. Creighton, 483 U.S. 635, 640 n.2 (1987)). The defense generally shields "all but the plainly incompetent or those who knowingly violate the law." Ashcroft v. al-Kidd, 563 U.S. 731, 743 (2011) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)). The burden to establish qualified immunity rests with the defendant claiming its protection. Beers-Capitol v. Whetzel, 256 F.3d 120, 142 n.15 (3d Cir. 2001).

A court evaluating a claim of qualified immunity considers two distinct inquiries: whether, based on the record evidence, a constitutional right has been violated and, if so, whether that right was "clearly established" at the time of the alleged violation. See Spady v. Bethlehem Area Sch. Dist., 800 F.3d 633, 637 (3d Cir. 2015) (quoting Pearson, 555 U.S. at 232). A court may begin its qualified immunity analysis with either prong. Pearson, 555 U.S. at 236. We begin with the latter.

Plaintiffs identify the right at issue as "C.R.'s right to be free from unlawful seizure." (Doc. 66 at 7). But the Supreme Court has repeatedly admonished that, when analyzing qualified immunity, courts should not "define clearly established law at a high level of generality." al-Kidd, 563 U.S. at 742; see also Kisela v. Hughes, 584 U.S. __, 138 S. Ct. 1148, 1152-53 (2018); Mullenix v. Luna, 577 U.S. __, 136 S. Ct. 305, 308 (2015). A plaintiff need not produce a case directly on point, but existing precedent must have placed the constitutional question "beyond debate." Mullenix, 136 S. Ct. at 308 (quoting al-Kidd, 563 U.S. at 741). The state actor must have "fair notice" that his conduct was impermissible under federal law; thus, reasonableness "is judged against the backdrop of the law at the time of the conduct." Kisela, 138 S. Ct. at 1152. The appropriate inquiry is whether the Constitution prohibited the officer's conduct in "the specific context of the case," *viz.*, the actual situation the officer confronted. Mullenix, 136 S. Ct. at 308-09 (citing Haugen v. Brosseau, 543 U.S. 194, 199-200 (2004)). The Supreme Court, however, has consistently recognized that general statements of the law can suffice to give "fair and clear warning" to state actors when the facts and circumstances represent an "obvious case" of unlawfulness. Kisela, 138 S. Ct. at 1153; White v. Pauly, 580 U.S. __, 137 S. Ct. 548, 552 (2017).

Beyond a generic reference to Fourth Amendment principles, plaintiffs have not identified a single decision which would have alerted Trooper Grbich that his conduct was or may be unlawful. It does not appear that the Supreme Court has spoken on the issue of what a law enforcement officer is to do with an innocent, minor passenger of a vehicle when the vehicle's driver is placed under arrest. Nor

has the Third Circuit Court of Appeals addressed this particular issue. In the only case remotely approximating the instant matter within this circuit, the district court determined that it was *not* unreasonable for an officer to transport a passenger in handcuffs to the state park office to arrange for a ride home after the passenger's driver had been arrested. See Wiers v. Barnes, 925 F. Supp. 1079, 1087-89 (D. Del. 1996). Nothing in the decisional law indicated to Trooper Grbich that declining to wait for C.R.'s father to arrive at the scene and instead transporting her to the custody of a friend selected by her mother would violate her constitutional rights.

Plaintiffs rely on A.G. v. City of Park Ridge, 198 F. Supp. 3d 856 (N.D. Ill. 2016), in their opposition brief. As a preliminary matter, the A.G. decision issued more than a year after the events at issue in the case *sub judice*. To the extent plaintiffs cite this case to suggest that Trooper Grbich was on notice that his conduct was unlawful, we reiterate that we assess the reasonableness of a state actor's conduct against the body of decisional law existing "at the time of the conduct." Kisela, 138 S. Ct. at 1152. To the extent plaintiffs rely on A.G. for its holding that the officer's conduct there was an "obvious" Fourth Amendment violation for qualified immunity purposes, a review of A.G.'s allegations reveals material factual distinctions. In A.G., the police officer was alleged to have violated the six-year-old plaintiff's Fourth Amendment rights when he "detain[ed] her for several hours, alone in the car and then at the station with no explanation of what was happening with her parents, after assaulting her parents as she watched, and where the impetus for the detention was the unlawful arrest of her parents." A.G., 198 F. Supp. 3d at 863. The only parallel between the two sets of circumstances is

that both cases involve claims that parent(s) were arrested unlawfully. Although we certainly do not minimize C.R.'s experience, the facts of <u>A.G.</u> are so distinguishable as to render the decision inapposite.

Assuming each of the allegations in plaintiffs' second amended complaint to be true, the court cannot find that Trooper Grbich's conduct in placing C.R. in his patrol car after her mother's arrest and transporting her to the home of a family friend violated clearly established law. Accordingly, Trooper Grbich is entitled to qualified immunity on C.R.'s Fourth Amendment claim. We will grant the State Police defendants' motion to dismiss Count II. Because we will dismiss C.R.'s constitutional claim for illegal seizure, we must also dismiss her claim against Commissioner Blocker in Count IV for failing to train and equip State Police employees to prohibit that seizure.

### 3. *Count IV: Failure to Train and Equip Claim by Plaintiffs Against Commissioner Blocker*

Plaintiffs assert a claim against Commissioner Blocker in his official capacity for developing and implementing a policy which requires officers to rely exclusively on information provided by the CLEAN and NCIC systems and removes discretion from troopers in executing bench warrants. Plaintiffs assert that, by implementing such a policy, Commissioner Blocker has failed to train State Police employees or to provide State Police employees with adequate tools to guard against unlawful arrest and detention resulting from misidentification. The State Police defendants seek dismissal of this claim, asserting that Commissioner Blocker is entitled to

Eleventh Amendment immunity and that plaintiffs fail to state a claim against him. We briefly address the State Police defendants' arguments in turn.

As we articulated in our initial Rule 12 opinion, the Eleventh Amendment to the United States Constitution precludes federal claims for monetary damages against a state and its agencies. U.S. CONST. amend. XI; see Kimel v. Fla. Bd. of Regents, 528 U.S. 62, 72-73 (2000); Lombardo v. Pennsylvania, 540 F.3d 190, 194-95 (3d Cir. 2008). Because a suit against a state employee in his official capacity is the equivalent of a suit against the state itself, this jurisdictional bar extends to plaintiffs' claims against Commissioner Blocker in his official capacity. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 66 (1989); Hindes v. FDIC, 137 F.3d 148, 158 (3d Cir. 1998). Of the three exceptions to Eleventh Amendment immunity, we have determined that only one has potential applicability in the matter *sub judice*: under *Ex parte* Young, 209 U.S. 123 (1908), a state official may be sued in their official capacity for prospective injunctive or declaratory relief. (See Doc. 46 at 10-13); see also Constitution Party of Pa. v. Cortes, 824 F.3d 386, 396 (3d Cir. 2016) (citing *Ex parte* Young, 209 U.S. 123; MCI Telecomm. Corp. v. Bell Atl. Pa., 271 F.3d 491, 506 (3d Cir. 2001)).

We previously dismissed plaintiffs' official-capacity claims against Trooper Grbich, finding that plaintiffs failed to allege an ongoing constitutional violation or to seek particular declaratory or prospective injunctive relief in accordance with *Ex parte* Young. Commissioner Blocker contends that the second amended complaint repeats the same error by failing to allege that he is responsible for any of the harm alleged. *A contrario*, plaintiffs aver that Commissioner Blocker maintains a practice

of relying exclusively on the CLEAN and NCIC systems to execute bench warrants and fails to provide proper training concerning avoidance of misidentification for bench warrant arrests. And plaintiffs seek appropriate declaratory and remedial injunctive relief to redress these claimed violations. Accordingly, the claims against Commissioner Blocker in his official capacity fall squarely within the bounds of *Ex parte* Young.

Commissioner Blocker's arguments on the merits fail for the same reasons. Rather than engaging with plaintiffs' *allegata*, Commissioner Blocker remonstrates broadly that the second amended complaint includes only conclusory allegations with respect to his alleged liability. We disagree. As we observed *supra*, plaintiffs identify a specific policy developed and implemented by the Pennsylvania State Police, to wit: one of requiring officers to rely entirely and exclusively on the CLEAN and NCIC systems in identifying bench warrants and depriving officers of discretion in executing those warrants. Commissioner Blocker is an appropriate defendant under *Ex parte* Young—as the agency head, Commissioner Blocker is charged with enforcement of the allegedly unconstitutional policy that plaintiffs seek to enjoin. See Cortes, 824 F.3d at 396 (quoting MCI Telecomm. Corp., 271 F.3d at 506). Plaintiffs properly plead a claim for prospective injunctive and declaratory relief against Commissioner Blocker in accordance with *Ex parte* Young. We will deny the State Police defendants' motion to dismiss Count IV.

### B. The Dauphin County Defendants

Plaintiffs assert three claims against various of the Dauphin County defendants: in Count I, M.L. Rothermel asserts a claim for false arrest against P.O.

Brown; in Count III, plaintiffs together assert a claim alleging a custom or practice exhibiting deliberate indifference against Dauphin County, Clerk Klein, and Sheriff Chimienti; and in Count V, M.L. Rothermel asserts a claim alleging a failure to train and equip against Dauphin County.

### 1. *Count I: False Arrest Claim by M.L. Rothermel Against P.O. Brown*

M.L. Rothermel asserts that P.O. Brown facilitated and failed to prevent her false arrest. She concedes that P.O. Brown correctly identified the probationer as "Melissa Ann Rotharmel" in the request for a probation revocation hearing that he submitted to the judge. (Doc. 48 ¶ 35). She claims, however, that P.O. Brown knew the bench warrant eventually issued by the judge incorrectly identified the probationer as "Mellisa Ann Rothermel" and failed to correct the misspelling. (Id. ¶¶ 37, 40, 119). She asserts that this act "set in motion" events that caused her to be arrested without probable cause in violation of the Fourth Amendment. (Id. ¶ 119). P.O. Brown seeks dismissal of the claim against him on four grounds, asserting: *first*, that the claim is time-barred by the applicable two-year statute of limitations and that the claim does not relate back to the date of the original complaint; *second*, that plaintiffs unreasonably delayed in adding him to this lawsuit; *third*, that M.L. Rothermel fails to state a claim for a Fourth Amendment violation against him; and *fourth*, that he is entitled to qualified immunity.

Because we agree that P.O. Brown is entitled to qualified immunity, we address only that argument. As noted *supra*, the doctrine of qualified immunity shields from liability those defendants whose alleged conduct does not violate

clearly established law.  <u>Pearson</u>, 555 U.S. at 244-45.  Plaintiffs simply have not alleged that P.O. Brown violated M.L. Rothermel's clearly established constitutional rights.

Section 1983 liability for false arrest under the Fourth Amendment extends beyond the arresting officer "to other officials whose *intentional actions* set the arresting officer in motion."  <u>Berg v. County of Allegheny</u>, 219 F.3d 261, 272 (3d Cir. 2000) (emphasis added).  M.L. Rothermel concedes that P.O. Brown did nothing wrong in preparing the request for a probation revocation hearing; in fact, she expressly pleads that he "correctly spelled Melissa Ann Rotharmel's name on the request." (Doc. 48 ¶ 35).  The entire premise of the claim against P.O. Brown is that he knew or should have known that the name on the warrant was misspelled and thus should have acted to remedy the error.  In the single paragraph of their brief addressing this claim, plaintiffs cite no decisional law to support their legal theory. (<u>See</u> Doc. 73 at 27).  Moreover, the second amended complaint includes no facts to support the conclusory assertion that P.O. Brown "knew" of the error. (<u>See</u> Doc. 48 ¶ 40).  Plaintiffs admit as much in their opposition brief, instead urging the court to infer from P.O. Brown's mere presence at the revocation hearing where the bench warrant issued that P.O. Brown knew the warrant contained a typographical error. (Doc. 73 at 27).  The second amended complaint does not support this quantum inferential leap.  Because plaintiffs have failed to plead that P.O. Brown violated M.L. Rothermel's clearly established rights, we find that P.O. Brown is entitled to qualified immunity and will grant his motion to dismiss Count I.

### 2. *Count III: Custom or Policy Claim by Plaintiffs Against Dauphin County, Clerk Klein, and Sheriff Chimienti*

Before turning to the merits of Count III, we must first identify the proper parties thereto. We note preliminarily that, although Count III is styled as being asserted by both M.L. Rothermel and C.R., the allegations in that count concern only M.L. Rothermel. Accordingly, to the extent Count III is also asserted by C.R., it must be dismissed for failure to state a claim.

#### a. The Proper Defendants

Count III identifies three defendants: Dauphin County, Clerk Klein, and Sheriff Chimienti. The latter two defendants are named in their respective official capacities. Decisional law is clear—and the parties do not dispute—that Sheriff Chimienti and his office are considered a "sub-unit of [the] County" for purposes of Section 1983 litigation and thus is not a discrete entity subject to suit. See Gresh v. County of Clinton, No. 1:15-CV-1466, 2016 WL 1162320, at *4 (M.D. Pa. Mar. 24, 2016) (Conner, C.J.) (collecting cases); (see also Doc. 68 at 11-12; Doc. 73 at 8 n.1). Plaintiffs agree that a claim against Sheriff Chimienti in his official capacity is redundant of the claim against Dauphin County itself. (Doc. 73 at 8 n.1). We will dismiss Sheriff Chimienti as a defendant in his official capacity in Count III.

The parties dispute whether Clerk Klein is a county official. Plaintiffs posit that Clerk Klein, like Sheriff Chimienti, is a county official; they explain that their pleading identifies Clerk Klein as a defendant protectively, in the event that the court disagrees and finds Clerk Klein to be a state officer. (See Doc. 73 at 8

n.1).  Defendants believe Clerk Klein to be a state official who shares in the Commonwealth's Eleventh Amendment immunity.  (See Doc. 68 at 8-11).

As we observed in our first Rule 12(b) opinion in the matter *sub judice*, the Pennsylvania Constitution designates the clerk of court as a county officer.[4]  See PA. CONST. art. IX, § 4.  Notwithstanding this designation, court administrators are included as part of the "State judicial personnel system" by statute, 42 PA. CONS. STAT. § 1905(a), and their salaries and other compensation are set by the state, see id. § 1905(b).  The consensus among federal district courts in Pennsylvania is that, because of this statutory treatment and the judicial system's status as an arm of the state, court administrators sued in their official capacities are not "persons" subject to suit for money damages under Section 1983 and are protected from such suits by the Eleventh Amendment.[5]  Plaintiffs identify no contrary authority.  (See Doc. 73 at 8 n.1).  Accordingly, we join our sister courts in concluding that Clerk Klein is an officer of the state.

Our inquiry does not end there.  Defendants contend that, because Clerk Klein is an officer of the state, she is entitled to share in the Eleventh Amendment protections accorded the Commonwealth.  That immunity, however, extends only so far as Clerk Klein is sued for monetary damages, and M.L. Rothermel explicitly

---

[4] Because plaintiffs' claims against the municipal entities were conclusory in nature and thus failed on their merits, we did not resolve the parties' dispute as to whether the Clerk of Court is a state or county officer.  (See Doc. 46 at 23 n. 5).

[5] See, e.g., O'Neal v. Bedford Cty., No. 3:16-CV-62, 2017 WL 244866, at *4 (W.D. Pa. Jan. 19, 2017); Kunkle v. Naugle, No. 15-896, 2015 WL 7756197, at *6 (E.D. Pa. Dec. 2, 2015); Malcomb v. Beaver County Pennsylvania (Prothonotary), No. 13-CV-1772, 2014 WL 3892023, at *2 (W.D. Pa. July 31, 2014); Johnson v. Ferber, No. 02-8508, 2004 WL 1119931, at *6-7 (E.D. Pa. May 18, 2004).

disclaims any request for monetary damages against Clerk Klein. (Doc. 73 at 9). Rather, as with the State Police defendants, M.L. Rothermel properly invokes *Ex parte* Young as an exception to Eleventh Amendment immunity, requesting only prospective injunctive and declaratory relief against Clerk Klein. We will deny defendants' motion to dismiss the claim against Clerk Klein on immunity grounds.[6]

### b.    Merits

We turn to the merits of M.L. Rothermel's claim against Dauphin County and Clerk Klein in her official capacity. The second amended complaint avers that Dauphin County and Clerk Klein maintain a multi-step administrative procedure for producing and managing all bench warrants which does not adequately guard against misidentification and wrongful arrests.

To bring a Section 1983 claim against a municipality, the plaintiff must show that "the alleged constitutional transgression implements or executes a policy, regulation[,] or decision officially adopted by the governing body or informally

---

[6] Clerk Klein also invokes quasi-judicial immunity. The doctrine of quasi-judicial immunity insulates from suit those public officials whose role is "functionally comparable to that of a judge," Keystone Redevelopment Partners, LLC v. Decker, 631 F.3d 89, 95 (3d Cir. 2011) (quoting Hamilton v. Leavy, 322 F.3d 776, 785 (3d Cir. 2003)), or who acts pursuant to a court order, Hamilton, 322 F.3d at 782-83 (citing Wolfe v. City of Pittsburgh, 140 F.3d 236, 240 (3d Cir. 1998); Richman v. Sheahan, 270 F.3d 430, 437 (7th Cir. 2001)). Quasi-judicial immunity protects defendants sued in their *individual* capacities; it does not apply to defendants, like Clerk Klein, who are sued in their *official* capacity alone. Assocs. in Obstetrics & Gynecology v. Upper Merion Township, 270 F. Supp. 2d 633, 662 (E.D. Pa. 2003). As the Supreme Court has held, "the only immunities available to the defendant in an official-capacity action are those that the governmental entity possesses." Hafer v. Melo, 502 U.S. 21, 25 (1991) (citing Kentucky v. Graham, 473 U.S. 159, 167 (1985)).

adopted by custom." <u>Mulholland v. Gov't Cty. of Berks</u>, 706 F.3d 227, 237 (3d Cir.

2013) (citation omitted).  In other words, a plaintiff can establish Section 1983

municipal liability in two ways: policy or custom.  <u>Watson v. Abington Township</u>,

478 F.3d 144, 155 (3d Cir. 2007).  A policy exists when a decisionmaker possessing

final authority to establish public policy with respect to the disputed action issues

an official proclamation, policy, or edict.  <u>Natale v. Camden Cty. Corr. Facility</u>, 318

F.3d 575, 583-84 (3d Cir. 2003) (quoting <u>Kneipp v. Tedder</u>, 95 F.3d 1199, 1212 (3d

Cir. 1996)).  By contrast, a custom is an act that is not formally approved but is

nonetheless "so widespread as to have the force of law."  <u>Id.</u> (quoting <u>Bd. of Cty.</u>

<u>Comm'rs. v. Brown</u>, 520 U.S. 397, 404 (1997)).  A plaintiff may also establish liability

based upon a municipal policy or custom by showing that a policymaker failed to

take affirmative action despite an obvious need to correct the "inadequacy of

existing practice [which is] so likely to result in the violation of constitutional

rights" that inaction exhibits "deliberate indifference" to the need.  <u>Id.</u> (quoting

<u>Bd. of Cty. Comm'rs</u>, 520 U.S. at 417-18).

A government entity exhibits deliberate indifference when it "disregard[s] a

known or obvious consequence of" its action.  <u>Connick v. Thompson</u>, 563 U.S. 51, 61

(2011).  The Third Circuit has explained that, to prove liability, the plaintiff must

establish that the municipal policy or custom was itself unconstitutional or was the

"moving force" behind the constitutional deprivation.  <u>Thomas v. Cumberland</u>

<u>County</u>, 749 F.3d 217, 222 (3d Cir. 2014) (citation omitted).  Thus, to prevail on a

<u>Monell</u> claim, a plaintiff must identify the challenged policy or custom, attribute it

to the public entity, and show a causal link between the execution of the policy or custom and the injury suffered.  See Natale, 318 F.3d at 583-84.

The court previously dismissed plaintiffs' threadbare Monell claims, finding that conclusory *allegata* that Dauphin County failed to train, direct, supervise, or control its employees did not satisfy bare minimum pleading requirements.  (Doc. 46 at 23-24).  The second amended complaint responds to the court's prior ruling, expanding at length on the specific policy challenged by plaintiffs.  Specifically, the second amended complaint alleges that the Dauphin County Sheriff's Office and the Dauphin County Clerk of Courts office maintain a five-step process for preparing bench warrants.  (Doc. 48 ¶ 136).  The process relies almost entirely on an automated computer system, generating warrants by incorporating information from criminal complaints without any established procedures for a human user to guard against error.  (See id. ¶¶ 136-37, 141).  Plaintiffs allege that, in this case, the Dauphin County defendants' lack of procedural or technical safeguards resulted in the court issuing a bench warrant for the wrong individual, leading to the unlawful arrest of M.L. Rothermel.  (Id. ¶¶ 38, 41, 142, 144).

Plaintiffs' second amended complaint remedies the deficiencies of their initial pleading and states a plausible claim against Dauphin County and Clerk Klein for failing to develop and implement procedures to guard against erroneous warrants and wrongful arrests.  The Third Circuit has previously concluded that a county may be liable under Monell when its clerk's office relies exclusively on an automated computer system when issuing bench warrants and fails to implement procedural or technical safeguards to protect against erroneous warrants.  Berg,

219 F.3d at 275-77.  The Berg court noted that an "obvious" risk in the field of technology is necessarily to be determined on a case by case basis and "under an evolving standard" before remanding the matter for a jury to consider whether the county was deliberately indifferent to the need for safeguards.  Id.  The decision unequivocally put municipalities on prospective notice "of the dangers of using compartmentalized computer systems without viable fail safes" and admonished that "widespread computerization carries with it the ability and responsibility to institute more effective safeguards against human error than existed in the past." Id. at 277.

We recognize that Berg concerned the county's failure to establish procedures to guard against *internal* errors in the process of preparing and issuing bench warrants.  Nonetheless, its guidance is instructive here.  Plaintiffs offer the persuasive argument that it is equally apparent following Berg that county offices should not automatically and blindly incorporate identifying information from an externally prepared criminal complaint without installing their own procedures for double-checking such information.  For purposes of Rule 12(b)(6), plaintiffs plausibly allege that defendants were on notice of and deliberately indifferent to the risk that their procedures may violate innocent persons' constitutional rights.

### 3. *Count V: Failure to Train and Equip Claim by M.L. Rothermel Against Dauphin County*

M.L. Rothermel lastly asserts a claim against Dauphin County for failure to train and equip employees.  The second amended complaint alleges that Dauphin County has a policy of (1) failing to collect fingerprints or other data to confirm the

identity of persons brought to Dauphin County Prison pursuant to bench warrants, (2) accepting such persons for incarceration without ensuring that the descriptive information on the returned warrant matches the individual brought to the Prison; and (3) delaying collection of certain admission information—collection of which is required under Pennsylvania law—for several days after an individual is brought in on a warrant.  (See Doc. 48 ¶¶ 159-61).

A Monell claim premised on the alleged failure to train employees requires the plaintiff to show that the alleged training deficiency amounts to "deliberate indifference" to constitutional rights of individuals who will come into contact with those employees.  Thomas, 749 F.3d at 222 (quoting Carter v. City of Philadelphia, 181 F.3d 339, 357 (3d Cir. 1999)).  Ordinarily, a pattern of constitutional violations will give notice to a municipal actor that new or different training is necessary, and continued adherence to the original training program will demonstrate the "conscious disregard" required to establish deliberate indifference.  Thomas, 749 F.3d at 223 (citation omitted).  As noted *supra*, however, there are certain situations where a need for training is "so obvious" that, even without a pattern of previous constitutional violations, failing to provide such training could rise to the level of deliberate indifference.  Id. (quoting City of Canton v. Harris, 489 U.S. 378, 390 n.10 (1989)).

Dauphin County asserts that its employees were under no obligation to address M.L. Rothermel's claim of innocence.  (Doc. 76 at 11-12).  Their assertion is correct as far as the legal principle goes—a number of decisions hold that the Constitution does not require an arresting officer "to investigate the arrestee's

claim of innocence or mistaken identity." Garcia v. County of Bucks, 155 F. Supp. 2d 259, 265-66 (E.D. Pa. 2001) (collecting cases). But Count V does not allege that the County violated M.L. Rothermel's rights by failing to investigate her repeated claims of innocence. Count V contends that Dauphin County's admissions process *in toto* is so deficient as to be deliberately indifferent to the obvious risk that an innocent person may be misidentified and wrongly incarcerated. Accepting the allegations of the second amended complaint as true, Dauphin County employs lackluster identification procedures during the prison admission process. What is more, plaintiffs allege that the County has a settled practice of delaying the collection of identifying information mandated by Pennsylvania law for the very purpose of confirming identity.

Dauphin County suggests that its policies are supported by Morales v. City of Philadelphia, No. 15-1318, 2016 WL 97925 (E.D. Pa. Jan. 7, 2016). *Per contra*, the Morales decision underscores the claimed deficiencies in the County's process. In Morales, the plaintiff alleged that his wrongful incarceration was based in part on the city's failure to include fingerprinting to verify the identity of arrested persons. See Morales, 2016 WL 97925, at *3-4. The court denied the plaintiff's Monell claims and held that the city was not constitutionally required to supplement its existing identification procedures—which required city employees "to examine past and current addresses, photo identification, social security numbers, and other sources of information to confirm identity, not just names and birthdates"—with fingerprint verification. Id. at *3. M.L. Rothermel does not challenge Dauphin County's failure to implement fingerprint verification. She oppugns its alleged failure to implement

*any* identity verification process for persons brought to Dauphin County Prison on bench warrants. Assuming M.L. Rothermel's allegations to be true, we find that Count V states a plausible claim against Dauphin County.

### C.    Leave to Amend

The Third Circuit Court of Appeals requires district courts to grant leave to amend in civil rights cases when a curative amendment is conceivable. <u>See</u> <u>Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.</u>, 482 F.3d 247, 251 (3d Cir. 2007); <u>Grayson v. Mayview State Hosp.</u>, 293 F.3d 103, 108 (3d Cir. 2002). The court has already once granted plaintiffs leave to amend their pleading, and plaintiffs do not request further amendment in their Rule 12 briefing. Accordingly, the court will not grant leave to amend, and this matter shall proceed on the second amended complaint.

## IV.    <u>Conclusion</u>

The court will grant in part and deny in part defendants' motions (Docs. 61, 62) to dismiss, as more fully articulated herein. An appropriate order shall issue.


 /S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:    September 28, 2018